## Commonwealth v. Shoemaker.

*Game laws—Shooting deer in excess of number permitted by law—Signing roster of hunting club—Participation in hunt—Question of fact—Act of May 24, 1923.*

1. Under the Act of May 24, 1923, § 707, P. L. 359, where it is shown that a person signed the roster of a hunting club, and that a deer was killed in the ensuing hunt, a *prima facie* case is made out against such person that he participated in the hunt and in the killing of the deer.

2. Such *prima facie* case, however, admits of explanation and rebuttal; and if it is shown that the person who signed the roster was not a member of the party and did not participate in the hunt, he cannot be convicted of killing or participating in killing the deer.

3. One who hauls several members of a hunting party to the meeting place in his automobile as an act of courtesy, does not thereby become a member of the party.

4. The fact that such person signed the roster justified the game warden in making information against him.

5. The temporary signing of a hunting party's roster is not to be approved.

Appeal from summary conviction. Q. S. Centre Co., Sept. Sess., 1925, No. 138.

*S. D. Gettig,* for Commonwealth.

*N. B. Spangler* (with him *Ivan Walker,*) for defendant.

KELLER, P. J., Aug. 5, 1926.—This was a proceeding brought originally before S. Kline Woodring, justice of the peace, charging the defendant with having violated section 707 of the Act of May 24, 1923, P. L. 359, known as "The Game Law," in that he had participated in the killing of seven deer during the hunting season of 1924. Upon his summary conviction and sentence before said justice, Sept. 5, 1925, he presented his petition for an appeal to this court, which was finally allowed Feb. 2, 1926; the case was afterward here tried without a jury, and the testimony taken has been filed with the record.

From the uncontradicted evidence adduced, it appears that during the hunting season of 1924 the defendant was a member and signed the roster of the Horse Gap Rod and Gun Club, and that he hunted with said club, which killed five deer; that later, on December 8, 1924, the defendant signed the roster of a party of Day Hunters in Bear Meadows, which party killed one deer; and that a day or so later, on or about Dec. 9, 1924, while hunting with the Dreibilbis party, whose roster he also signed, he personally killed a deer. The specific charge against the defendant was: "That W. C. Shoemaker, on the 9th day of December, A. D. 1924, . . . did unlawfully kill a deer, he having been a member of hunting parties in which said hunting parties the full quota of deer for said members of such hunting parties had been killed,

Commonwealth *v.* Shoemaker.

to wit: The said defendant was a member of the Horse Gap Rod and Gun Club, who killed five deer; and the second party said defendant was with was a party of Day Hunters, who killed one deer; in all, the said defendant was in parties who killed seven deer, contrary to the act of assembly in such case made and provided."

The only clause of section 707 of "The Game Law" applicable to the present proceedings is the fourth, which is as follows: "Every person who may hunt individually or with another camp or party hunting in unison for elk or deer or bear, or in any manner co-operating with others hunting for such animals, after having participated in any manner in killing during the season the number of such animals prescribed in this section for camps or hunting parties, shall be liable to the full penalty and costs of prosecution prescribed in this article for killing such animals contrary to the provisions of this article, and such penalty shall be imposed for every day such person shall hunt contrary to the provisions of this section."

The question in controversy here which the court must decide is whether or not the defendant was a member of the party of Day Hunters in Bear Meadows which killed a deer Dec. 8, 1924; if so, he was properly convicted before the justice and sentenced by him; for afterwards, when he hunted with the Dreibilbis party, *he was hunting for deer after having participated in some manner in killing during the season six deer, being the number of deer allowed to be killed during the season by camps or hunting parties;* if, however, he was not a member of the Bear Meadows party, he was wrongly convicted, and the same should be set aside. It will be noted in this connection that the defendant, if a member of the Bear Meadows Day Hunters, was guilty of having violated the fourth clause of section 707 of "The Game Law" if he afterwards *hunted* with the Dreibilbis party (as is admitted), whether he *killed a deer or not,* although it might be contended that the offence was aggravated by reason of the fact that he also killed a deer while thus illegally hunting.

The first act appearing to bear on the question involved here is that of June 7, 1917, § 21, P. L. 572. This section does not provide for a roster, but does provide that it shall be unlawful for any body of men, either camping together or hunting in unison, to kill or be possessed of more than six male deer, or more than one elk, or more than three bear, killed under the provisions of existing law, in a wild state, in any part of this Commonwealth in one season. Section 21 of the Act of 1917, was amended by section 7 of the Act of May 5, 1921, P. L. 353, wherein, for the first time, the keeping of a roster became mandatory; said latter act is also the first to contain a provision similar to that of clause 4, section 707, of the Act of 1923, above quoted. However, both the Acts of 1917 and 1921, above mentioned, were repealed by the Act of 1923, known as "The Game Law."

The question here involved is largely one of fact. After diligent search we have been unable to find any cases construing section 707 of the Act of 1923. In our opinion, proof of the fact that the defendant signed the roster of the Bear Meadows Day Hunters established a *prima facie* case on the part of the Commonwealth against him, capable, however, of explanation and contradiction; it is contended, however, by counsel for the defendant, it would be unreasonable to assume that the mere fact that he signed their roster, though it were clearly proven he did not in any manner hunt with said party, would make him liable for the penalty imposed for the violation of said section, if he afterwards hunted at all during said season; the real question is whether or not the defendant actually hunted with the Bear Meadows hunters, with

whom he had registered Dec. 8, 1924, and thus "participated in any manner in killing" the deer which one of their party shot.

A careful examination of the evidence shows that a party of Day Hunters was organized rather informally at Pine Grove Mills, this county, the evening of Dec. 7th and the morning of Dec. 8, 1924, to hunt for deer in Bear Meadows; that the defendant and his brother-in-law, B. P. Steel, who had intended to hunt alone that day, stopped at Pine Grove Mills the morning of Dec. 8th, where several of the Day Hunters, who had no way of getting into Bear Meadows, asked the defendant to take them along in his car, and, pursuant to their request, he took three of them, Charles Stuck, Stewart Bailey and R. A. Kline, with him; that the question of signing the roster then arose, and the defendant testified that at first he positively refused to sign it, stating he was not hunting with the party and did not wish to be included in it; that, finally, at the persuasion of their captain, Fred Gearhart, who said defendant would have to sign it, so that their party could hunt (as otherwise they were afraid of having trouble with the game warden because he was hauling part of their crowd), he signed the roster with the understanding that his name should be erased or removed as soon as they got into Bear Meadows. As to the greater part of this testimony, he is corroborated by Gearhart, the captain, who stated that Shoemaker didn't want to sign the roster, that he "didn't want to be counted in the bunch at all," and that he "didn't want to be one of our party," and that, so far as he knew, defendant did not hunt with their party that day. Gearhart's recollection was not clear as to the removal of Shoemaker's name from the roster, but said he "forgot to take it off, if he asked me." Lloyd Ripka, who was a watchman, testified that the defendant "went on out of our (first) drive," and that he didn't see him in any of their drives. B. P. Steel, who hunted with the party, testified that, after the first drive was over and before starting the second drive, he saw all the men who signed the roster, except Shoemaker. R. A. Kline testified that they insisted Shoemaker should sign the roster to "make us safe," and that "he wasn't to be counted in with the bunch;" that he saw Shoemaker going up the mountain, apparently away from the crowd, and that he didn't see him in any drives that day; that in his conversation with Gearhart, the captain, Shoemaker said he "positively would have nothing to do with this, . . . wouldn't have any thing to do with any deer, no share there or nothing; not hunting with you, just giving the use of the car." Dan Wagner testified he heard Shoemaker say he was not going to hunt with them, and that he did not see him from the time he left until he came back to his car in the evening. Stewart Bailey testified that Shoemaker didn't want to sign the roster because he wasn't going to hunt with them (the crowd), but finally did so "to make it safe for the rest of us." W. F. Heffner testified that he was present after Shoemaker signed the roster, and "three times he repeated he was not in the crowd, not a member, not to be considered a member of it, . . . not going to hunt at all with them."

As against this positive testimony, we have the fact that Shoemaker *did* sign the roster, and the testimony of several members of the Day Hunters that they were under the impression that Shoemaker had joined the party to hunt with them, although, so far as we recall, there was no positive testimony that he *did actually hunt with them.*

A familiar principle of law which must be observed in the trial of all criminal cases, whether before a justice of the peace, the court or a jury, is that the defendant has the presumption of innocence in his favor, and if a reasonable doubt exists as to his guilt, he is entitled to it and must be acquitted.

Commonwealth v. Shoemaker.

In this case, from all the testimony adduced, we are frank to say that we have very grave doubts as to the defendant's guilt. His actions at the time showed consciousness of innocence, in that on the following day he joined another hunting party, upon which occasion he personally killed a deer. Another fact to be taken into account is that, while the offence charged against him occurred Dec. 9, 1924, it was not until August, 1925, the information was made charging him therewith. The defendant made a serious error in signing the roster of the Bear Meadows Day Hunters if he did not intend to hunt with them; an act which warranted the game warden in making the information against him, but we feel that the natural inference to be drawn therefrom has been satisfactorily explained by the testimony produced by him at the hearing; and the Day Hunters were wrong in insisting upon Shoemaker's signing their roster, as, according to our view of the law, the mere fact that he was hauling several of their number to their place of meeting as an accommodation and act of courtesy did not thereby make him a member of their party. However, in this connection, we wish to say that we do not approve of any temporary signing of a hunting party's roster; it would be a fruitful source of misunderstanding and afford an easier opportunity to evade the law by those wishing to do so. A person is either a member of a hunting party or he is not. If not, his name should not be on the roster at all.

Under all the evidence, we are of the opinion, and so find, that the defendant, W. C. Shoemaker, was not a member of the party of Day Hunters in Bear Meadows which killed a deer Dec. 8, 1924, and, therefore, was not guilty of violating section 707 of the Act of 1923 by reason of his later having hunted with another party and killed a deer during the same hunting season.

And now, Aug. 5, 1926, we find the defendant, W. C. Shoemaker, not guilty, his appeal is sustained, and his conviction before the justice is reversed, and it is directed that the County of Centre shall pay the costs.